# Freeman v. Wilkes-Barre & Wyoming Valley Traction Company, Appellant.

*Negligence—Street railways—Improper remarks of counsel—Withdrawal of juror and continuance—Trial—Practice, C. P.*

Where, in a negligence case against a street railway company, counsel for the plaintiff in his address to the jury injects his personal experience as a standard of measurement of the conduct of the company's agent, uses language which is equivalent to the statement of a fact not proved, and appeals to the prejudice and sympathy of the jury by reference to the poverty of the plaintiff, a juror should be withdrawn and the case continued.

Such action should be taken by the court where the plaintiff's attorney uses language as follows: "The doctor in charge of staff would have taken R (agent for defendant) by the neck and kicked him out. According to R's story, if he had any decency or was even human, he would not have done business with the plaintiff at the hospital. The conduct of this agent was the most brutal and inhuman in my experience. They (doctors, naming them) are excrescences, a disgrace to the profession they belong to. Of course if we had the fees for doctors we could have brought them into court and shown that plaintiff is so bad that he cannot now even hold the lines of his horses."

Argued March 4, 1908. Appeal, No. 51, March T., 1908, by defendant, from judgment of C. P. Luzerne Co., Feb. T., 1905, No. 284, on verdict for plaintiff in case of Aaron Freeman v.

Wilkes-Barre & Wyoming Valley Traction Company.   Before
RICE, P. J., PORTER, HENDERSON, HEAD and BEAVER, JJ.
Reversed.

Trespass to recover damages for personal injuries.   Before
LYNCH, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,200.   Defendant
appealed.

*Errors assigned* amongst others were (4) portion of charge,
quoted in the opinion of the Superior Court, and (9) in not
withdrawing a juror and continuing the case because of the
language used by plaintiff's counsel, and quoted in the opinion
of the Superior Court.

*Paul Bedford,* with him *John T. Lenahan,* for appellant.—
We claim  that the ninth assignment should be sustained upon
the authority of Fisher v. Pennsylvania Co., 34 Pa. Superior
Ct. 500; Hale v. Hale, 32 Pa. Superior Ct. 37; Holden v. Penna.
Railroad Co., 169 Pa. 1; Walsh v. Wilkes-Barre, 215 Pa. 226;
Saxton v. Pittsburg Rys. Co., 219 Pa. 492.

*John McGahren,* with him *D. L. Rhone* and *D. L. & J. Q.
Crevling,* for appellee.—It is peculiarly within the discretionary
duty of the trial court to see that the trial is conducted in a
legal and orderly manner, and unless this discretion is abused
such order is not subject to appeal: Com. v. McMahon, 14 Pa.
Superior Ct. 621–626; Fisher v. Penna. Company, 34 Pa. Su-
perior Ct. 500, not yet reported and cited by the appellant,
does not apply to the remarks of counsel in this case, they being
of another nature.

The case of Hale v. Hale, 32 Pa. Superior Ct. 37, are remarks
made in disparagement of the parties and, therefore, does not
apply.

Walsh v. Wilkes-Barre, 215 Pa. 226, related also to the dis-
paragement of the parties.

OPINION BY BEAVER, J., April 20, 1908:

A careful reading of all the testimony in this case satisfies us

that the questions of the negligence of the defendant, the contributory negligence of the plaintiff and the execution and delivery of the written release of the plaintiff to the defendant were all for the jury and were properly submitted by the court to them. We, therefore, eliminate from the further consideration of the case all of the assignments of error, except the fourth and ninth.

The fourth assignment relates to an observation of the court in the charge, concerning the execution of the written release as follows: "You will observe the plaintiff was able to write, but nothing but his mark is made." This is a detached sentence from the charge of the court, in which the release, alleged to have been executed by the plaintiff, was under discussion. The portion of the charge legitimately relating to this subject was: "If the plaintiff signed the release in the absence of fraud practiced upon him, he is presumed to have known the contents and is estopped from recovering. You observe the plaintiff was able to write, but nothing but his mark was made." It is possible that the remark complained of might have raised a suspicion in the mind of the jury as to the fact of the plaintiff's execution of the release and of a fraud practiced upon him in connection therewith. It would doubtless have been better to have followed that with the remark that a broken clavicle, which is barely alluded to in another part of the charge, might have prevented his attaching his signature to the paper, and such an explanation would have relieved the statement of any approach to a one-sided presentation of the facts. If this were the only thing complained of, it is doubtful whether it would warrant a reversal.

The serious point in the case, however, is the question raised by the ninth assignment of error. It relates to remarks of counsel in their closing address to the jury which, as shown by the record, were as follows: "The doctor in charge of staff would (?) have taken Randolph by the neck and kicked him out. According to Randolph's (agent for defendant) story, if he had any decency or was even human, he would not have done any business with the plaintiff at the hospital. The conduct of this agent was the most brutal and inhuman in my

experience. They (Beahl and McKee) are excrescences, a disgrace to the profession they belong to. Of course, if we had the fees for doctors, we could have brought them into court and shown that plaintiff is so bad that he cannot now even hold the lines of his horses." The attention of the court was called to this language and a motion made by the defendant's attorney that "A juror be withdrawn and the case be continued." This motion was denied. We are of opinion that this language was improper in several respects. Injecting the personal experience of counsel as a standard of measurement of the conduct of the agent certainly was not allowable. If the question as to the decency and humanity of the action of the agent for defendant had been a proper subject for expert testimony, the counsel might have been, if the ground had been laid therefor, a proper witness; and, although it might have been within the proper limits of the argument to the jury to characterize his acts as indecent and inhuman, it was not proper to measure them by the experience of counsel. The remark, "Of course, if we had the fees for doctors, we could have brought them into court and shown that plaintiff is so bad that he cannot now even hold the lines of his horses," was equivalent to the statement of a fact not proved—that the defendant was in worse condition than had been made known to the jury by the testimony in the case. It was likewise an appeal to the prejudice and sympathy of the jury, because the necessary and unavoidable inference was the poverty of the plaintiff. It was wholly unwarranted and should have been promptly rebuked and remedied by the court. The only remedy in such a case, as pointed out by Mr. Justice FELL, in the late case of Saxton v. Pittsburg Railways Co., 219 Pa. 492, was by the withdrawal of a juror and the continuance of the case. It is there said:

"There was not the slightest foundation in the testimony, nor in the circumstances connected with the case, to support the statement of counsel that there had been a suppression of evidence, and the jury were so instructed by the court, in answer to points presented by defendant's counsel. This instruction did not cure the error of counsel. The effect of the statement on the minds of the jury is as manifest as was its purpose.

The other statements were intemperate appeals to the prejudices of the jury and invitations to find a verdict on false grounds.

"No verdict that may have been obtained by such means should be allowed to stand and the effective remedy is to withdraw a juror and continue the case. If courts are to continue to be places where justice is judicially administered, causes must be fairly presented and fairly defended, and the duty of counsel in this regard is not less important nor less imperative than that of the judge. A cause is not well tried, unless fairly tried, and a verdict obtained by incorrect statements or unfair argument or by an appeal to passion or prejudice stands on but little higher ground than one obtained by false testimony. It is not founded on the truth of the cause."

See also, to the same effect, Wagner v. Hazle Twp., 215 Pa. 219; Walsh v. Wilkes-Barre, 215 Pa. 226, and Hollis v. U. S. Glass Co., 220 Pa. 49.

We regret the necessity which compels a reversal of this case, as it was, in other respects, fairly tried.

Judgment reversed, with a new venire.